**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KERA FRAYER-EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action File No. |
| | ) |
| MIDEA AMERICA CORP. | ) |
| | ) JURY TRIAL DEMANDED |
| Defendant. | ) |
| | ) |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

COME NOW Plaintiff Kera Frayer-Evans, by and through undersigned counsel, and hereby files this **Complaint for Damages and Jury Trial Demand**, respectfully showing the Court as follows:

### I.      INTRODUCTION

1.

This is a civil tort action seeking recovery for Plaintiff Kera Frayer-Evans's severe burn injuries arising from the use of Defendant's pressure cooker on January 3, 2024. On that day, Ms. Frayer-Evans was using the subject pressure cooker as it was intended to prepare food for her family. Without prior warning or notice, the lid

to the subject pressure cooker detached, causing scalding hot contents of the pressure to land on Ms. Frayer-Evans, causing first degree burns on her thighs and second degree burns on her chest, requiring hospitalization. The subject incident occurred as a result of the failure of the pressure cooker's supposed "safety measures," which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## II.   PARTIES, JURISDICTION, VENUE & SERVICE OF PROCESS

2.

Plaintiff Kera Frayer-Evans is an adult citizen of the United States and a resident of Douglas County, Georgia. By filing this action, she avails herself of the jurisdiction and venue of this Court.

3.

Defendant Midea America Corp. ("Midea America") is a foreign corporation doing substantial business in the State of Georgia. Midea America is incorporated under the laws of Florida with its principal place of business at 300 Kimball Drive, Suite 201, Parsippany, New Jersey 07054. At all times pertinent to this Complaint, Defendant Midea America was and is in the business of designing, manufacturing,

2

marketing, importing, distributing, and selling a variety of consumer products, including pressure cookers, air fryers, and blenders, among others. Defendant Midea America transacts business in this State and derives substantial revenue from business in this State of Georgia. Defendant Midea America also maintains a registered agent in this State, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092, where Midea America may be served with legal process in this case. Because Defendant Midea America transacts business in this State, derives substantial revenue from this State, and maintains a registered agent to transact business in this State, jurisdiction and venue are proper in this Court with respect to Defendant Midea America.

4.

*Personal Jurisdiction over Midea America: Georgia's Long-Arm Statute.* Defendant Midea America transacts business in the State of Georgia, derives substantial revenue from goods sold, purchased and/or used in the State of Georgia, and regularly does or solicits business in Georgia. Midea America also maintains a registered agent to transact business in the State of Georgia, located at Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Under Georgia law, a foreign corporation that is authorized to transact business in

3

Georgia is a resident of this State and subject to direct personal jurisdiction in this State.[1]   Thus, this Court has direct personal jurisdiction over Defendant Midea America as a resident of this State in addition to long-arm personal jurisdiction over Defendant Midea America under Georgia's long-arm statute (O.C.G.A. § 9-10-91).

5.

*Personal Jurisdiction over Midea America: Due Process*.  Defendant Midea America derives revenue from sales of its consumer products within the State of Georgia and has purposefully availed itself of the privilege of doing business in Georgia by intentionally cultivating a market in Georgia and directly marketing to the Georgia market. In fact, Midea America maintains a registered agent to transact business in the State of Georgia. Midea America's actions in marketing and selling its products throughout Georgia, and maintaining a registered agent to transact

---

[1]   See O.C.G.A. § 9-10-90 (Georgia's long-arm statute defines "nonresident" to include a corporation that "is not authorized to do or transact business in this state at the time a claim or cause of action under [Georgia's long-arm statute] arises"); *see also Cooper Tire & Rubber Company v. McCall*, 312 Ga. 422 (2021); *see also Allstate Inc. Co. v. Klein*, 262 Ga. 599, 601 (1992) (The Supreme Court of Georgia held that a foreign corporation authorized to transact business in Georgia was a resident for purposes of personal jurisdiction because it did not meet the definition of "nonresident" in O.C.G.A. § 9-10-90 and could, thus, "sue or be sued to the same extent as a domestic corporation").

business in Georgia, should have led it to reasonably anticipate being hailed into Court here.   In short, Midea America has sufficient "minimum contacts" with Georgia so that subjecting it to personal jurisdiction here does not offend traditional notions of fair play and substantial justice.   Exercising personal jurisdiction over Midea America in this Court comports with due process.

6.

*Subject-Matter Jurisdiction*. This Court has jurisdiction over this case pursuant to diversity jurisdiction prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and there is complete diversity between the parties.

7.

*Venue.*  Venue is proper in the United States District Court for the Northern District of Georgia, Atlanta Division, pursuant to 28 U.S.C. § 90(a)(2) and LR 3.1(B)(1)-(3), N.D. Ga., because Defendant Midea America maintains a registered agent in Gwinnett County (which is within this District and Division).

### III.   <u>**OPERATIVE FACTS**</u>

*A. The Subject Pressure Cooker and Defendants' Safety Assurances*

8.

Defendant Midea America designs, manufactures, markets, imports, distributes, and sells a wide-range of consumer products, including the subject "Farberware 7-in-1 Programmable Pressure Cooker," which specifically includes the Model Number WM-CS6004W (referred to herein as the "subject Pressure Cooker").

9.

Defendant Midea America touts that the subject Pressure Cooker is designed with "protection features" that purport to keep the lid from being opened while the unit is under pressure.[2]

10.

For example, Defendant Midea America claims that the subject Pressure Cooker includes a "mechanical safety feature that locks the lid in place with the inner ring, once enough pressure builds up" to keep the lid from being opened while the

---

[2]   *See* Farberware 7-in-1 Programmable Pressure Cooker Owner's Manual at P. 9, attached as **Exhibit A**.

unit is under pressure and that the "[l]id can only be removed once pressure level lowers to required levels."[3]

11.

Despite Defendant's claims of "safety," it designed, manufactured, marketed, imported, distributed and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to their consumers.

12.

Specifically, said defects manifest themselves when, despite Defendant's statements, the lid of the subject Pressure Cooker is removable with built-up pressure, heat and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. Ms. Frayer-Evans was able to remove the lid while the subject Pressure Cooker retained pressure, causing her serious and substantial bodily injuries and damages.

---

[3]     *Id.*

13.

Defendant knew or should have known of these defects but has nevertheless placed profit ahead of safety by continuing to sell the subject Pressure Cookers to consumers, failing to warn consumers of the serious risks posed by the defects, and failing to timely recall the dangerously defective pressure cookers regardless of the risk of significant injuries to Plaintiff and consumers like her.

14.

Defendant ignored and/or concealed its knowledge of these defects in the subject Pressure Cookers from the Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said Pressure Cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and consumers like her.

*B. The Subject Incident*

15.

By reason of the forgoing acts or omissions, Ms. Frayer-Evans and/or her family purchased the subject Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from any defects of any kind, and that it was safe for their intended, foreseeable use of cooking.

16.

Plaintiff used the subject Pressure Cooker for its intended purpose of preparing meals for herself and/or family and did so in a manner that was reasonable and foreseeable by Defendant.

17.

On or about January 3, 2024, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the subject Pressure Cooker's lid being able to be opened while the Pressure Cooker was still under pressure, during the normal, directed use of the Pressure Cooker, allowing its scalding hot contents to be forcefully ejected from the Pressure Cooker and onto Plaintiff.

18.

Plaintiff suffered first degree burns on her thighs and second degree burns on her chest as a result of the scalding hot contents of the subject Pressure Cooker landing on her skin, requiring immediate hospitalization.

19.

The subject incident occurred as a result of the failure of the subject Pressure Cooker's supposed "safety measures," which purport to keep the consumer safe while using the Pressure Cooker. In addition, the incident occurred as the result of

Defendant's failure to redesign the subject Pressure Cooker, despite the existence of economical, safer alternative designs.

20.

Further, the subject Pressure Cooker was defectively designed and manufactured by Defendant in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable, and proper use of cooking food with the product; placing the Plaintiff, her family, and similar consumers in danger while using the Pressure Cooker.

21.

Defendant's subject Pressure Cooker possesses defects that make them unreasonably dangerous for its intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

22.

As a direct and proximate result of Defendant's intentional concealment of such defects, their failure to warn consumers of such defects, their negligent misrepresentation, their failure to remove a product with such defects from the stream of commerce, and their negligent design of such products, Plaintiff used an

unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries, including first- and second-degree burns.

23.

Consequently, Ms. Frayer-Evans seeks damages resulting from the use of the subject Pressure Cooker as described above, which has caused her to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## IV.   LEGAL CLAIMS

### COUNT ONE:
### Strict Product Liability

24.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

25.

At the time of Plaintiff's injuries, Defendant's subject Pressure Cooker was defective and unreasonably dangerous for use by foreseeable consumers, including Ms. Frayer-Evans.

26.

The subject Pressure Cooker was in the same or substantially similar condition as when it left the possession of the Defendant.

27.

Plaintiff did not misuse or materially alter the subject Pressure Cooker.

28.

The subject Pressure Cooker did not perform as safely as an ordinary consumer would have expected it to perform when used in a reasonably foreseeable way.

29.

Defendant is strictly liable to Plaintiff for design defects because the risks inherent in the subject pressure cooker's design outweigh its utility, particularly given the availability of feasible, safer alternative designs that would not impair the pressure cooker's functionality.  Thus, under Georgia law, the subject pressure cooker is defective in its design.  Specifically:

    a. The subject Pressure Cooker designed, manufactured, sold, and supplied by Defendant was defectively designed and placed into the

stream of commerce in a defective and unreasonably dangerous condition for consumers;

b.  The seriousness of the potential burn injuries resulting from the product drastically outweighs any benefit that could be derived from its normal, intended use;

c.  Defendant failed to properly market, design, manufacture, distribute, supply, and sell the subject Pressure Cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d.  Defendant failed to warn and place adequate warnings and instructions on the subject Pressure Cooker;

e.  Defendant failed to adequately test the subject Pressure Cooker; and

f.  Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiff's injuries and damages.

30.

Defendant knew, or should have known, at all times that as a manufacturer, designer, marketer and seller of new consumer products, the subject pressure cooker had to be designed, tested, manufactured and marketed so as to minimize risks versus

utilities, and that with this product, there was grave risk of harm to the user if Defendant failed to implement sufficient and reliable design components, safeguards, interlocks or other mechanisms to prevent the pressure cooker's scalding hot contents from severely injuring consumers like Plaintiff.  The subject pressure cooker was and is defective by design because the design chosen by Defendant allows that very danger to occur and lacks adequate safeguards to protect consumers from harm.

31.

Upon information and belief, but without the benefit of fact discovery and pleading in the alternative as specifically allowed by O.C.G.A. § 9-11-8, the design and warning defects alleged above were the proximate cause of Plaintiff's injuries and damages, but those injuries and damages were or may have also been the result of manufacturing defects in the subject pressure cooker which rendered the pressure cooker unreasonably dangerous, and not reasonably safe, for its intended use, in that as fabricated and manufactured by Defendants, the pressure cooker and its related components were made of materials, or in such dimensions, that they lost the integrity of their connection and seal so as to allow the scalding hot contents to fly out of the pressure cooker and onto Plaintiff.

14

32.

Defendants' actions and omissions were the direct and proximate cause of the Plaintiff's injuries and damages.

**COUNT TWO:**
**Negligence**

33.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

34.

Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and her family.   Defendant also had a duty to adequately warn of dangers posed by a product's design.  These duties applied to the subject pressure cooker at issue in this case.

35.

Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of the Subject Pressure Cooker in that Defendant knew or should have

known that said pressure cooker created a high risk of unreasonable harm to the Plaintiff and consumers alike.

36.

Defendant was negligent in the design, manufacture, advertising, warning, marketing and sale of the subject Pressure Cooker in that, among other things, they:

a. Failed to use due care in designing and manufacturing the subject Pressure Cooker to avoid the aforementioned risks to individuals;

b. Placed an unsafe product into the stream of commerce;

c. Aggressively, over-promoted and marketed their pressure cookers through television, social media, and other advertising outlets; and

d. Were otherwise careless or negligent.

37.

Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the subject Pressure Cooker was still pressurized, Defendant continued to market their pressure cooker to the general public (and continue to do so). Defendant was additionally negligent in that it failed to give adequate or proper warnings or instructions, and failed to make appropriate post-sale marketing efforts to prevent known incidents, such as the one detailed herein.

Defendant's negligent acts and/or omissions as detailed in the paragraphs above were a direct and proximate cause of Plaintiff's damages complained of herein.

**COUNT THREE:**
**Breach of Implied Warranty for Fitness for a Particular Purpose**

38.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

39.

Defendant manufactured, supplied, and sold their pressure cooker with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

40.

Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

41.

The subject Pressure Cooker was not fit for the particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

42.

Ms. Frayer-Evans reasonably relied on Defendant's representations that the subject Pressure Cooker was a quick, effective, and safe means of cooking.

43.

Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

## COUNT FOUR:
## Breach of Implied Warranty of Merchantability

44.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

45.

At the time Defendant marketed, distributed and sold its pressure cookers to Ms. Frayer-Evans, Defendant warranted that its pressure cooker was merchantable and fit for the ordinary purposes for which they were intended.

46.

Members of the consuming public, including consumers such as Ms. Frayer-Evans, were the intended third-party beneficiaries of the warranty.

47.

Defendant's pressure cooker was not merchantable and fit for its ordinary purpose, because it had the propensity to lead to serious personal injuries as described herein in this Complaint.

48.

Ms. Frayer-Evans and/or her family purchased and used the subject Pressure Cooker with the reasonable expectation that it was properly designed and manufactured, free from any defects of any kind, and that it was safe for their intended, foreseeable use of cooking.

49.

Defendant's breach of implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages.

**COUNT FIVE:**
**Violation of the Georgia Fair Business Practice Act; O.C.G.A. § 10-1-390 *et. seq*.**

50.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

51.

The Georgia Fair Business Act ("FBPA"), O.C.G.A. § 10-1-390 *et. seq.*, was enacted to "protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce." O.C.G.A. § 10-1-390(a).

52.

At all times material herein, Defendant warranted and represented that its pressure cooker was safe and free of defects in materials and workmanship and that they possessed certain "safety features."

53.

Defendant's warranties and representations that its pressure cookers were safe and free from defects, including that they possessed "safety" devices/systems would influence a reasonable consumer's decision whether to purchase the pressure cookers.

54.

Defendant's failure to warn of its pressure cooker's defects was a material omission that would influence a reasonable consumer's decision whether to purchase their pressure cookers.

55.

Ms. Frayer-Evans and/or her family relied on the truth of Defendant's warranties and representations concerning the subject Pressure Cookers, and Ms. Frayer-Evans suffered personal damages as a result of this reliance.

56.

Had Ms. Frayer-Evans and/or her family been adequately warned concerning the likelihood that the subject Pressure Cooker's lid could be removed while pressurized, they would have taken steps to avoid damages and/or injuries by not purchasing this product.

57.

As a result of these violations of consumer protection laws, Ms. Frayer-Evans has incurred and will incur serious physical injury, pain, suffering, medical and hospital expenses and other expenses related to the diagnosis and treatment thereof, for which the Defendant is liable.

## COUNT SIX:
## Punitive Damages

### 58.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

### 59.

The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including Ms. Frayer-Evans. Despite their knowledge that the lid could be prematurely removed while the unit remained pressurized, Defendant made conscious decisions not to redesign, despite the existence of an economically feasible, safe alternative design, and not to adequately label, warn, or inform the unsuspecting consuming public about the dangers associated with the use of their pressure cookers. Defendant's outrageous conduct rises to the level that Plaintiff should be awarded punitive damages to deter Defendant from this type of outrageous conduct in the future, as well as to discourage other defendants from placing profit above the safety of consumers.

60.

Prior to and during the manufacturing, sale, and distribution of their pressure cookers, Defendant knew that said pressure cooker were in a defective condition as previously described herein and knew that those who purchased and used their pressure cookers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

61.

Further, Defendant knew that its pressure cookers presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of the same pressure cookers to risk of serious and permanent injury from their use.

62.

Despite its knowledge, Defendant, for the purpose of enhancing their profit, knowingly and deliberately failed to remedy the known defects in their pressure cookers, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of its pressure

cookers knowing these actions would expose consumer, such as Ms. Frayer-Evans, to serious danger in order to advance their pecuniary interest and monetary profit.

63.

Defendant's conduct was carried on with willful and conscious disregard for the safety of the Plaintiff, her family, and consumers like them, entitling the Plaintiff to punitive damages.

**DAMAGES SOUGHT BY PLAINTIFF**

64.

Plaintiff re-alleges all previous paragraphs and incorporates them herein by reference.

65.

Kera Frayer-Evans seeks recovery of damages from Defendant for past, present, and future medical bills and expenses, life care needs, and other necessary expenses incurred that are incident-related, in amounts to be shown by the evidence at trial.

66.

Kera Frayer-Evans seeks damages from Defendant for all past, present, and future pain and suffering resulting from her incident-related injuries, in an amount

to be determined by the enlightened conscience of the jury, including all past, present, and future mental and emotional pain and suffering resulting from her incident-related injuries.

67.

Kera Frayer-Evans seeks a recovery from Defendant for any diminished future income and earning capacity proximately flowing from, substantially caused by, or resulting from the subject incident, as to be shown more fully by the evidence at trial.

68.

Kera Frayer-Evans seeks a recovery from Defendant for the loss of full enjoyment of life and disfigurement she has suffered and will continue to suffer as a proximate result of the incident and the injuries sustained therein, in an amount to be determined by the enlightened conscience of the jury.

69.

Kera Frayer-Evans seeks punitive damages from Defendant in a constitutionally appropriate amount determined by the enlightened conscience of the jury to be sufficient to punish, penalize, and deter Defendant for its past misconduct and to deter them from engaging in similar misconduct in the future.

## VI.    <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully prays:

(a)    That Summons issue requiring the presently-named Defendant to appear and Answer this Complaint as provided by law;

(b)    That Plaintiff has a trial by jury;

(c)    That Plaintiff recover from Defendant all damages, economic and non-economic, tangible and intangible, general and special, that are compensable under Georgia law that are sufficient to compensate fully and fairly for all losses proximately caused by the tortious acts and omissions of Defendant, to be determined by the enlightened conscience of the jury based upon the evidence adduced at trial;

(d)    That punitive damages be awarded against Defendant under O.C.G.A. § 51-12-5.1 or other applicable law, as set forth above;

(e)    That all costs be taxed against Defendant; and

(f)    For such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted, this 25th day of June, 2024.

**CONLEY GRIGGS PARTIN LLP**

*/s/ Davis Popper*
DAVIS POPPER
Georgia Bar No. 863530
HUEL M. O'KELLEY IV
Georgia Bar No. 926507
ALEX S. EDMONDS
Georgia Bar No. 564605

4200 Northside Parkway, NW
Building One, Suite 300
Atlanta, Georgia 30327
Telephone:   (404) 467-1155
davis@conleygriggs.com
kip@conleygriggs.com
alex@conleygriggs.com

**ATTORNEYS FOR PLAINTIFF**